OPINION
Appellant Tonya Garner appeals the decision of the Stark County Court of Common Pleas, Juvenile Division, that granted permanent custody of her daughter, Monique Garner, to the Stark County Department of Human Services ("Agency"). The following facts give rise to this appeal. On September 4, 1996, appellant gave birth to her daughter. The father of the child is Mark Flowers. Two days after the child's birth, the Agency filed a complaint for permanent custody alleging Monique was a dependent child. In the complaint, the Agency alleged Monique's parents were not complying with a case plan, with respect to four of the couple's other children. The Agency also alleged the parents have a history of domestic violence and drug use. The trial court conducted a shelter care hearing on September 9, 1996. The magistrate ordered the child returned to appellant under the protective supervision of the Agency pending an evidentiary hearing on the complaint. Thereafter, the Agency filed a motion to set aside the order of the magistrate made at the shelter care hearing. The trial court conducted a hearing on the Agency's motion on September 25, 1996. The trial court sustained the Agency's motion and granted temporary custody to the Agency pending investigation of appellant's residence. If the residence was found to be appropriate, Monique was to be returned to appellant's residence. On October 4, 1996, the Agency filed a case plan which was the same case plan filed in case number JU-89069 concerning her four older brothers. The trial court conducted an adjudicatory hearing on November 18, 1996. At this hearing, appellant stipulated to a dependency finding and to a portion of the facts alleged in the complaint. The trial court found Monique to be a dependent child based on the facts to which appellant had stipulated. The Agency amended its complaint and requested temporary custody only. The trial court scheduled disposition for November 20, 1996. At this hearing, the trial court found neither parent had obtained adequate housing, domestic violence problems remained between the parties and appellant was in domestic violence counseling but Monique's father was not. The trial court granted temporary custody of the child to the Agency. The trial court conducted a review hearing, pursuant to the Agency's motion, on January 30, 1997. The trial court found appellant still had not obtained adequate housing. The trial court also noted new concerns of appellant's drug use and the fact that she had been terminated from Quest Recovery Services. The trial court ordered that Monique not be returned until appellant obtained adequate housing and resolved issues of her drug use. On August 1, 1997, the Agency filed a motion for permanent custody of Monique due to her parent's failure to comply with their case plan. The trial court conducted a hearing on this motion on November 4, 1997. At the hearing, the Agency withdrew its motion for permanent custody and instead proceeded on a motion to extend temporary custody. The trial court granted the Agency's motion until March 6, 1998. On January 22, 1998, the Agency filed a second motion to extend temporary custody. At the hearing on January 28, 1998, both parents agreed to an extension of temporary custody, with the Agency, until September 6, 1998. On April 28, 1998, appellant filed a motion for return of child. The trial court heard this motion on May 6, 1998. The Agency filed a second motion for permanent custody on July 29, 1998. The trial court conducted a trial on this motion on November 5, 1998. The trial court issued findings of fact and conclusions of law and a judgment entry, on January 14, 1999, granting permanent custody of Monique to the Agency. Appellant timely filed a notice of appeal and sets forth the following assignments of error:
 I. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILD CANNOT OR SHOULD NOT BE PLACED WITH THE APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 II. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 I, II
We will address appellant's First and Second Assignments of Error simultaneously as both concern whether the trial court's decision is supported by the manifest weight and sufficiency of the evidence. Appellant contends, in her First Assignment of Error, that the trial court's conclusion that the minor child could not be placed with her within a reasonable amount of time is against the manifest weight and sufficiency of the evidence. Appellant maintains, in her Second Assignment of Error, that the granting of permanent custody, to the Agency, is also not supported by the manifest weight and sufficiency of the evidence. We disagree with both assignments of error. As an appellate court, we do not weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Thus, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279, syllabus. It is based on this standard that we review appellant's two assignments of error. In her First Assignment of Error, appellant challenges the trial court's conclusion, under R.C.2151.414(B) (1), that the child is abandoned or orphaned and cannot be placed with either parent within a reasonable time or should not be placed with his or her parents. In support of this conclusion, under R.C. 2151.414(B) (1), the trial court cited eight grounds contained in R.C. 2151.414(E). These grounds are as follows: (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. * * *
(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A) (4) of section 2151.353 [2151.35.3] of the Revised Code;
(3) The parent committed any abuse as described in section2151.031 [2151.03.1] of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;
(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
(5) The parent is incarcerated for an offense committed against the child or a sibling of the child;
(7) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing;
(8) The parent is repeatedly incarcerated and the repeated incarceration prevents the parent from providing care for the child;
(9) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect;
We find the evidence introduced at the hearing supports the trial court's conclusion under R.C. 2151.414(B) and R.C. 2151.414(E). Appellant's case plan remained substantially unchanged, after Monique's birth in 1996, from the case plan she was required to complete concerning her four other children who remain in long term foster care. Tr. at 39. Appellant did complete Goodwill parenting classes on two separate occasions, in 1997 and 1998, but she merely received a certificate of participation. Id. at 21, 28. Colleen Miller, appellant's Goodwill Parenting Instructor, testified that appellant often arrived late for class, remained unmotivated throughout the course, exhibited signs of alcoholism, and barely completed fifty-seven percent of her goals in the second class. Id. at 25-28. Appellant also did not receive the drug prevention certification from the parenting program because she failed to attend the classes. Id. at 24. Appellant's substance abuse concerns also persisted since 1995. Id. Appellant testified positive for cocaine in June 1998 and was asked to provide urine samples three times per week. Id. at 40, 57. Appellant knew of this new requirement and also knew the agency agreed to pay for her urinalyses. Id. at 56-57. Alexianne Swartz testified that because appellant had not been able to secure housing, she worked out a deal with appellant whereby if appellant could provide six urine samples in two weeks, Swartz would attempt to procure federal funds to assist appellant with housing costs. Id. at 60. Appellant provided five clean urine samples in one week but failed to provide the sixth sample. Id. at 60. Appellant admitted at trial that she never returned to Quest Recovery Services after September 24, 1998. Id. at 43. The record also indicates appellant has not maintained stable employment. Appellant did not complete her GED but she did obtain a nursing assistant certificate. Id. at 77. Appellant testified that since 1996, the longest period she has held a job has been six months. Id. at 46. Finally, as to appellant's relationship with her daughter, the record indicates appellant visited with Monique approximately one time per month since her birth even though the social worker agreed to provide visits every two weeks. Id. at 64. The social worker present during the visits testified that she was not satisfied with appellant's interaction with Monique and testified Monique showed little bonding with appellant. Id. at 67-68, 78. The evidence presented concerning best interest of the child established that at the time of the hearing, Monique was two years old and had been in foster care since she was two days old. Monique is an adoptable child that suffers from no physical, mental or intellectual disabilities and is developmentally on target. There is daily contact with two of her brothers. Monique has been in the same foster home since birth and these foster parents seek to adopt her. Further, the guardian ad litem recommended that the trial court grant the agency's motion for permanent custody. Based on the above evidence, we find the trial court's decision that the minor child could not be placed with appellant within a reasonable time and that the best interest of the child would be served by granting permanent custody supported by the manifest weight and sufficiency of the evidence. Appellant's First and Second Assignments of Error are overruled.
For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Stark County, Ohio, is hereby affirmed.
By: Wise, P.J. Hoffman, J., and Farmer, J., concur.